**THIS OPINION IS A PRECEDENT OF THE TTAB**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

Mailed: June 12, 2012

Opposition No. 91182155
Opposition No. 91182825

Spier Wines (PTY) Ltd.

v.

Ofer Z. Shepher

**ELIZABETH J. WINTER, INTERLOCUTORY ATTORNEY:**

*Inter Partes* Conference

On May 1, 2012, the parties, Spier Wines (PTY) Ltd. (represented by Matthew Cuccias of Jacobson Holman PLLC) and Ofer Z. Shepher (represented by Ralph C. Loeb of Krane & Smith), and Elizabeth Winter, the assigned Interlocutory Attorney, all participated in a telephone conference, held at applicant's request, regarding opposer's fully briefed motion (filed February 15, 2012) to amend its pleading and applicant's motion (filed April 23, 2012) to preclude opposer from taking the testimonial deposition on written questions of its only noticed witness or allow an oral deposition.[1]

---

[1] Insofar as these proceedings were suspended on April 27, 2012, pending the Board's consideration of the parties' respective motions and because the noticed testimonial deposition was to be taken upon written questions, applicant's motion to suspend these

*See* Trademark Rules 2.120(i)(1) and 2.127(c); and TBMP § 502.06 (3d ed. 2011). This order summarizes applicant's motion to preclude the testimony of opposer's witness, the Board's phone conference discussion with the parties with respect to this motion, and the Board's analysis and order resolving applicant's motion.[2]

Applicant's Motion to Preclude Use of Witness

- *Preliminary Matter*

Regarding the nature of applicant's motion, where a party believes the adverse party's pretrial disclosures are insufficient, untimely, or are otherwise technically deficient, judicial economy is best accomplished by bringing such issue to the Board's attention promptly by a motion to quash the deposition or to strike the pretrial disclosures as insufficient before the deposition takes place.[3] *See Carl Karcher Enterprises, Inc. v. Carl's Bar & Delicatessen, Inc.*,

---

proceedings pending resolution of applicant's alternative motions is moot.

[2] The Board's order issued on May 15, 2012, explained the basis for granting opposer's motion to amend, resumed these proceedings, and reset the trial schedule based on the Board's disposition of both motions during the teleconference.

[3] In contrast, Trademark Rule 2.123(e)(3) explicitly allows for a motion to strike the entire deposition after the fact if the pretrial disclosures are improper or inadequate. In accordance therewith, the adverse party may elect to cross-examine the testimonial witness under protest while reserving the right to object and, promptly after the testimony is completed, move to strike the testimony from the record.

98 USPQ2d 1370, 1373 n.4 (TTAB 2011).  Here, applicant does not contend that opposer's pretrial disclosures or its notice of testimonial deposition upon written questions were untimely or otherwise technically deficient.  Accordingly, applicant's motion to preclude opposer from using its noticed testimony witness is construed as a combined motion to strike opposer's pretrial disclosures and to quash opposer's notice of taking the testimony deposition of Eve Jell, based on opposer's failure to timely supplement its initial disclosures.  *See id.  See also Byer California v. Clothing for Modern Times Ltd.*, 95 USPQ2d 1175, 1178 (TTAB 2010).

- *The Parties' Arguments*

Applicant's motion is supported by the declaration of applicant's counsel (Ralph C. Loeb) and attached exhibits, and requests that the Board preclude opposer from taking the testimonial deposition upon written questions of Ms. Jell, opposer's International Sales Director and a resident of South Africa.  In the alternative, applicant seeks permission to take an oral testimonial deposition of Ms. Jell in the United States or in South Africa.  Applicant argues that opposer, in its initial disclosures served on June 13, 2008, failed to identify Ms. Jell and the subjects about which she is knowledgeable, although documents produced by opposer on March 29, 2012, in connection with discovery, show that

Ms. Jell has been an employee of opposer since at least October 1, 2007 (Loeb declaration ¶6, Exh. D). Applicant contends that opposer's first disclosure regarding Ms. Jell was in its pretrial disclosures served on March 8, 2012, on the eve of trial and more than a year after the discovery period had closed. Applicant also asserts that he is unfairly prejudiced by the late notice of opposer's testimonial witness because applicant did not have the opportunity to depose Ms. Jell during the discovery period on the particular issues on which opposer expects Ms. Jell to testify, such as awards and accolades for opposer's goods, pronunciation of the term "SPIER," and customer perceptions, behavior and impressions with respect to opposer's mark. Applicant contends that had he been informed of Ms. Jell's existence and areas of knowledge, his trial preparation strategy may have differed. Further, applicant contends that his cross-examination of Ms. Jell will be severely impaired given that her testimony will be limited to written questions. Mr. Loeb also states in his declaration that in attempting to resolve this issue, he proposed to take the oral testimonial deposition of Ms. Jell either in South Africa, where she is located, or at a location on the East Coast of the United States, but that opposer rejected his offer.

During the teleconference with the Board, the parties discussed the alternative requests in applicant's motion. Opposer argues that there was no unfair surprise because the person identified in opposer's initial disclosures (Ms. Monica Barrows) is no longer employed by opposer; that applicant did not avail himself of the opportunity to take the discovery deposition of Ms. Barrows while she was employed by opposer; and that there is no surprise to applicant with respect to the particular topics about which Ms. Jell will testify.  On this latter point, opposer notes that it already submitted evidence on those topics by means of Ms. Barrows' 2008 declaration in support of opposer's motion for summary judgment and by opposer's responses to applicant's second set of interrogatories, which were served in January, 2012.[4]

As to applicant's alternative motion to allow an oral testimonial deposition of Ms. Jell in the United States or in South Africa, opposer argues that applicant has not shown any prejudice or good cause that would support a finding that this case should be an exception to Trademark Rule 2.123(a)(2), which requires that a deposition of a

---

[4] In its order dated December 13, 2011, the Board ordered the parties to serve outstanding responses to certain discovery requests within thirty days of the mailing date of that order.

representative in a foreign country must be taken upon written questions, unless the Board, upon motion for good cause, orders that the deposition be taken by oral examination, or the parties so stipulate.  Further, opposer contends that it would be prejudiced if applicant were allowed to take an oral deposition of Ms. Jell because applicant has already seen opposer's written questions for the testimonial deposition.  In response to questioning by the Board, opposer stated that it had informed applicant by means of a discovery response served on November 10, 2010, that Ms. Barrows was no longer in opposer's employ,[5] and admitted that opposer did not provide to applicant the name of a substitute or replacement for Ms. Barrows prior to its pretrial disclosures.

In reply, applicant argues, *inter alia*, that opposer did not provide any reason why it did not inform applicant of Ms. Jell's identity earlier in the proceeding; and that applicant had chosen not to depose Ms. Barrows because applicant believed that her declaration submitted in support of opposer's summary judgment motion represented the best of her knowledge regarding issues involved in the case.

---

[5] This assertion was not contradicted by applicant.

6

- *Board's Analysis*

Each party to an *inter partes* proceeding must serve initial disclosures that identify "*each individual* likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." *See* Fed. R. Civ. P. 26(a)(1); Trademark Rules 2.116(a) and 2.120(a)(2) (Board emphasis). *See also* TBMP § 533.02(b) (3d ed. 2011). Parties are also required to supplement their respective initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); Trademark Rules 2.116(a) and 2.120(a)(1). *See also Great Seats, Inc. v. Great Seats, Ltd.*, 100 USPQ2d 1323, 1326 (TTAB 2011); *Galaxy Metal Gear Inc. v. Direct Access Technology Inc.,* 91 USPQ2d 1859, 1861 (TTAB 2009).

In identifying individuals through initial disclosures, a party need not identify all those that may be called at trial as potential "trial witnesses," and instead must identify any trial witnesses through pretrial disclosures.[6]

---

[6] Parties are required to serve pretrial disclosures to inform the adverse party of the identity of prospective trial witnesses,

However, because individuals identified through initial disclosures have knowledge that the disclosing party may use to support its claims or defenses, the persons identified in initial disclosures may reasonably be viewed as possible trial witnesses. *Jules Jurgensen/Rhapsody, Inc. v. Baumberger,* 91 USPQ2d 1443, 1443 n.1 (TTAB 2009). *Cf. Great Seats*, 100 USPQ2d at 1326 n.5 ("If the identity of the witness is known when initial disclosures are made, and the relevant knowledge of the witness is known, then a party may have to disclose the identity of the witness when making initial disclosures, even if the party has no plans at that time to rely on testimony from the witness."). Additionally, the Board has stated that, unless seasonably remedied, a party's failure to identify a witness in its initial disclosures deprives the adverse party of the opportunity to seek discovery of the identified witness, and this fact "must [be] consider[ed] … as one of the relevant circumstances … in determining whether to strike [the witness's] testimony deposition." *Jules Jurgensen*, 91 USPQ2d at 1444-45.

---

or any witness from whom it might take testimony if needed, thus avoiding surprise witnesses and facilitating the orderly taking of testimony. *See* Fed. R. Civ. P. 26(a)(3); Trademark Rule 2.116(a). *See also Notice of Final Rulemaking, Miscellaneous Changes to Trademark Trial and Appeal Board Rules,* 72 Fed. Reg. 42242, 42257-58 (Aug. 1, 2007).

Under the estoppel sanction, a party that fails to provide information via disclosure or appropriate response to a discovery request may, upon motion or objection by its adversary, be precluded from using that information or witness at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Trademark Rule 2.116(a). *See Great Seats*, 100 USPQ2d at 1326-27. To determine whether opposer's failure to disclose Ms. Jell in its initial disclosures, in supplemental initial disclosures, or in a supplemental response to applicant's interrogatories (discussed *infra*) is substantially justified or harmless, the Board is guided by the following five-factor test applied in *Great Seats*, namely: "1) the surprise to the party against whom the evidence would be offered; 2) the ability of that party to cure the surprise; 3) the extent to which allowing the testimony would disrupt the trial; 4) importance of the evidence; and 5) the non-disclosing party's explanation for its failure to disclose the evidence." *See Great Seats*, 100 USPQ2d at 1327 (internal citations omitted).

Applying these factors to the present case, the record shows that opposer served its initial disclosures on June 13, 2008 (Exh. A, Loeb dec.); that opposer identified Ms. Barrows in its initial disclosures as its "witness"; that no other person was identified in opposer's initial disclosures as

having discoverable information; that opposer informed applicant on November 10, 2010, that Ms. Barrows was no longer employed by opposer; that opposer served its pretrial disclosures on March 8, 2012, which listed Ms. Jell as opposer's trial witness (Exh. C, Loeb dec.); that Ms. Jell was a signatory for "Spier Wines South Africa" on a "Memorandum of Understanding" regarding the "Spier Brand," which was executed on October 1, 2007[7] (Exh. D, Loeb dec.); and that opposer did not supplement its initial disclosures or otherwise specifically inform applicant in writing of any individual other than Ms. Barrows (in the United States or elsewhere) likely to have discoverable information that opposer might use to support its claims, as required under Fed. R. Civ. P. 26(e)(1)(A).

The Board also finds that opposer could have identified Ms. Jell in supplementary initial disclosures at least as early as November 10, 2010, when opposer informed applicant that Ms. Barrows was no longer employed by opposer. The information and documents referenced in opposer's initial disclosures (along with the identification of Ms. Barrows),

---

[7] The Memorandum of Understanding was provided to applicant in opposer's production of documents on March 29, 2012, after opposer's pretrial disclosures were served. A redacted copy of a segment of that document was submitted as an attachment to counsel's declaration in support of the subject motion.

are virtually identical to the list of topics and documents about which opposer intends to have Ms. Jell testify during the course of the noticed testimonial deposition. Further, Ms. Jell is opposer's International Sales Director (whereas Ms. Barrows was only the Northeast U.S. Sales Manager) and Ms. Jell was a signatory for opposer in an agreement dated October 1, 2007. Yet, notwithstanding Ms. Jell's noteworthy corporate role, Ms. Jell was not identified as a person having discoverable information in opposer's initial disclosures, nor did opposer identify Ms. Jell in supplementary initial disclosures later in the proceeding, e.g., when the proceeding resumed after the Board denied opposer's motion for summary judgment on August 20, 2010, or three months later, when opposer informed applicant that Ms. Barrows was no longer in opposer's employ.[8]

Alternatively, opposer could have facilitated the exchange of information between the parties during the course

---

[8] Although the record shows that opposer informed applicant on November 10, 2010, of Ms. Barrows' status as a former employee, it is unclear at what point during the proceeding Ms. Barrows was no longer employed by opposer. Subsequent to the date on which Ms. Barrows executed her declaration in support of opposer's motion for summary judgment (*i.e.*, on August 22, 2008), the proceeding was effectively suspended for settlement from October 15, 2008 until June 30, 2010, by multiple orders extending applicant's time to respond to the summary judgment motion in view of the parties' settlement negotiations. The proceeding resumed on August 20, 2010, in accordance with the Board's order denying opposer's motion for summary judgment.

of discovery by supplementing its discovery responses to identify Ms. Jell.  For instance, it is noted that in opposer's responses dated September 29, 2010, to Applicant's Second Amended First Set of Interrogatories,[9] opposer identified "Mr. Andrew Milne (CEO) and Mr. Gerhard de Kock (FD)" in response to interrogatory no. 1, which requested that opposer identify "each officer and managing agent of Opposer."[10]  Various corporate officers, directors and management level employees are often identified during discovery, and may be deposed by the adverse party[11] or used to adduce evidence during the testimony periods in Board proceedings.[12]  In the case at bar, Ms. Jell was clearly an

---

[9] Opposer's responses to applicant's August 25, 2010 interrogatories were submitted as an attachment to applicant's response to opposer's motion to compel filed on March 21, 2011.

[10] The record does not indicate whether the title "International Sales Director," held by Ms. Jell, represents either an officer or managing agent position with opposer.  Without knowing more, based on the current record, and given that applicant only inquired about opposer's officers and managing agents, opposer cannot be faulted for not originally identifying Ms. Jell in response to applicant's interrogatory no. 1.  *Cf. Charrette Corp. v. Bowater Communication Papers Inc.,* 13 USPQ2d 2040, 2041 (TTAB 1989) ("If registrant wished to depose during discovery a witness having knowledge of petitioner's sales and advertising of PROPRINT products[,] a request for the person or persons most knowledgeable on that subject would have been a proper inquiry and would have elicited the information it was seeking.").

[11] *See generally* Fed. R. Civ. P. 30(b)(6) (concerning depositions of corporate entities); Fed. R. Civ. P. 31(a)(3) (authorizing broad use of management level employees' deposition testimony).

[12] *See, e.g.,* TBMP §§ 404.03(a)(1), 404.03(b) & 703.01(a) (3d ed. 2011).

individual that might fill such roles.[13]  Therefore, opposer should have included Ms. Jell in its response to applicant's interrogatory no. 1, assuming that "International Sales Director" is an officer or managing agent post for opposer. Even if it would not have been required of opposer to identify Ms. Jell in its response to interrogatory no. 1, once Ms. Barrows was no longer in its employ, that is, after it became clear that it would be unlikely for applicant to further consider that Ms. Barrows would be a witness for opposer,[14] then opposer should have supplemented its initial disclosures to identify Ms. Jell.  In any event, opposer did not inform applicant of Ms. Jell's identity as a person having discoverable information in its initial disclosures, in any supplemental initial disclosures, or in a supplemental response to discovery requests.

Opposer's contention that any prejudice to applicant resulting from lack of prior notice was the result of his

---

[13] It is unclear why opposer would identify its Financial Director, rather than opposer's International Sales Director, where the Board's jurisdiction is limited to registrability and opposer's only claim in this case is likelihood of confusion. *See General Mills, Inc. v. Fage Dairy Processing Industry S.A.*, 100 USPQ2d 1584 (TTAB 2011) ("The Board has no authority to determine the right to use, or the broader questions of infringement, unfair competition, damages or injunctive relief.").

[14] *See Kellogg Co. v. New Generation Foods Inc.*, 6 USPQ2d 2045, 2048-49 (TTAB 1988) (deposition of former employee can only be taken by voluntary appearance or by subpoena).

failure to depose Ms. Barrows is unavailing.  As an initial matter, the parties' obligations to serve initial, expert and pretrial disclosures are independent requirements of the Trademark Rules.  *Jules Jurgensen/Rhapsody*, 91 USPQ2d at 1445.

Here, opposer failed to identify Ms. Jell, its International Sales Director, as having discoverable information before serving its pretrial disclosures.  As a result, applicant was unable to conduct appropriate discovery with respect to Ms. Jell.  Clearly, applicant's inability to conduct discovery in connection with Ms. Jell was caused by opposer's failure to fulfill its written disclosure obligations as to Ms. Jell, and is not the result of any inaction on applicant's part with respect to Ms. Barrows. *Cf. Wallace v. U.S.A.A. Life General Agency, Inc.*, --- F.Supp.2d ---, 2012 WL 1068313 (D.Nev. March 29, 2012) (plaintiff's argument that it "should be permitted to use its non-disclosed witness because its disclosed witnesses could have provided the same information if deposed is a *non sequitur* and a thinly-veiled attempt to assign the responsibility to Plaintiff for its own violations of Rule 26").

Further, unlike the facts discussed in the Board's recent decision in *Byer California v. Clothing for Modern*

14

*Times Ltd.*, 95 USPQ2d 1175, 1178 (TTAB 2010), this is not a case where applicant had been informed of the potential witness in discovery responses, yet waited until the penultimate day of the discovery period to seek information regarding opposer's claims.  Rather, since Ms. Barrows was the only identified potential witness and she resided in the United States, it was reasonable for applicant to expect to rely on the information set forth in Ms. Barrows' summary judgment declaration for trial preparation and for conducting an oral cross-examination of Ms. Barrows during her testimonial deposition, if any.  Moreover, given that only *sixteen days* remained in the discovery period when opposer informed applicant that Ms. Barrows was no longer employed by opposer,[15] the prejudice to applicant resulting from opposer's failure to disclose Ms. Jell's identity is hardly the result of applicant's failure to act.  Opposer gave applicant only minimal notice that opposer's only previously-identified witness would likely be unavailable during trial.  In addition, although the parties agreed to three two-week and one one-month extensions to the discovery period in order to address issues related to their respective

---

[15] According to the Board's order dated August 20, 2010, discovery was set to close on November 26, 2010.

written responses to discovery,[16] opposer did not identify Ms. Jell as a person having discoverable information during those extensions.  Thus, opposer's contention that any prejudice to applicant is the result of applicant's conduct is entirely unpersuasive.

In view of these particular circumstances, the Board finds that opposer's failure to identify Ms. Jell as a person having discoverable information earlier in these proceedings, as well as opposer's failure to supplement its initial disclosures once Ms. Barrows was no longer employed by opposer or at any time prior to serving its pretrial disclosures, resulted in surprise to applicant.  Thus, the first factor applied in *Great Seats* strongly favors applicant.  Further, the surprise to applicant was prejudicial, not harmless, because applicant was deprived of the opportunity to seek discovery of opposer's only subsequently-identified testimonial witness.  *See Jules Jurgensen*, 91 USPQ2d at 1444-45.

Additionally, because opposer provided no explanation whatsoever as to why it did not identify Ms. Jell as a person

---

[16] The Board granted the parties' consent motions filed on November 24, 2010, December 10, 2010, December 29, 2010, and on January 6, 2011, to extend the discovery period in order to allow the parties to meet and confer regarding the sufficiency of their respective discovery responses.  The discovery period ultimately closed on February 5, 2011.

having discoverable information prior to serving its pretrial disclosures, the fifth factor discussed in *Great Seats* also favors applicant.

In determining the importance of the evidence or testimony to the fair adjudication of the proceedings, the Board will consider various factors, including whether the testimony is cumulative or if evidence can be introduced by other means, and whether the proposed testimony would be admissible. *See Byer*, 95 USPQ2d at 1179 (excluding testimony on subjects within the knowledge of other witness identified in initial disclosures). *Cf. MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 77 USPQ2d 1001, 1009-10 (Fed. Cir. 2005) ("while this exclusion admittedly left MicroStrategy without evidence of damages or causation for most of its business tort claims, this factor is only one of five that does not tip the scale in favor of MicroStrategy, particularly were [it] alone is to blame for creating this situation").

In this matter, it is noted that opposer previously submitted status and title evidence of its oldest pleaded registration and, during its testimony period, opposer submitted notices of reliance. In view thereof, the Board finds that the importance of Ms. Jell's testimony is less critical to opposer's case than if opposer had failed to

adduce any other evidence in support of its claims. Further, to the extent Ms. Jell would be called to testify that opposer has received industry awards and accolades for its goods, in the absence of evidence establishing the significance of the awards and knowledge thereof on the part of relevant U.S. purchasers (in addition to evidence regarding opposer's sales, advertising and market share), such testimony would not necessarily establish that opposer's marks are famous, and might only tend to show that opposer's products are perceived to be of high quality or are recognized only by industry groups. *See Bose Corp. v. QSC Audio Products Inc.*, 293 F.3d 1367, 63 USPQ2d 1303, 1305-06 and 1309 (Fed. Cir. 2002) (fame indicated by widespread critical assessments and nationwide exposure to mark in connection with relevant goods). *Cf. Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F.Supp.2d 431, 54 USPQ2d 1594 (S.D.N.Y. 2000) (Court concluded that wine store's trade dress was not famous, stating that "while Best Cellars is certainly famous within retail design circles and within the retail wine world, such fame does not extend to the general public").

In addition, Ms. Jell's proposed testimony, as that of a fact witness (and an individual representative of a party to

18

the proceeding) on the pronunciation of the term "SPIER,"[17] is likely to be accorded relatively little weight on the issue of the pronunciation of the mark by consumers in the United States, which is critical in the comparison of the marks.[18] *Cf. Centraz Industries Inc. v. Spartan Chemical Co.,* 77 USPQ2d 1698, 1701 (TTAB 2006) (There "is no correct pronunciation of a trademark, and it obviously is not possible for a trademark owner to control how purchasers will vocalize its mark"), *citing Interlego AG v. Abrams/Gentile Entertainment Inc.,* 63 USPQ2d 1862 (TTAB 2002).

It is also unclear how Ms. Jell, who apparently lives in South Africa, would be able to offer admissible testimony on the perceptions, behaviors and impressions of consumers in the United States.  In short, with regard to whether Ms. Jell's testimony would be important to the fair adjudication

---

[17] Opposer's testimonial deposition questions (attached as Exh. A to the notice of her deposition) show that Ms. Jell would be asked to "spell and describe how Opposer's SPIER mark is pronounced" (Loeb dec., Exh. J).

[18] Presumably, Ms. Jell would testify that the involved marks are or are likely to be pronounced the same.  The Board has long considered testimony on pronunciation of trademarks – even by linguistic experts -- to be of little or no use. *Edwards Lifesciences Corp. v. VigiLanz Corp.*, 94 USPQ2d 1399, 1402 (TTAB 2010); *Anheuser-Busch Inc. v. Holt*, 92 USPQ2d 1101, 1106 (TTAB 2009); *Plyboo America Inc. v. Smith & Fong Co.*, 51 USPQ2d 1633 (TTAB 1999); *Fisons Ltd. v. UAD Labs., Inc.*, 219 USPQ 661, 663 (TTAB 1983); *Mennen Co. v. Yamanouchi Pharm. Co.*, Ltd., 203 USPQ 302, 305 (TTAB 1979).

of this case,[19] it does not appear that Ms. Jell's testimony on written questions would be particularly critical or persuasive in the ultimate determination of the merits of this case by a panel of Board judges. *Cf. Design Strategies, Inc. v. Davis*, 228 F.R.D. 210, 213 (S.D.N.Y. 2005) (finding importance of testimony factor weighed against preclusion because proffered testimony would be highly probative of material facts and would carry substantial weight). In view of the foregoing, the Board concludes that the fourth factor set forth in *Great Seats* favors applicant.

With respect to whether applicant can cure the surprise resulting from the identification of the witness, applicant's ability to mitigate the missed opportunity to depose Ms. Jell during discovery is significantly diminished by the fact that the discovery period closed over one year ago and by limitations of the noticed testimonial deposition upon written questions. *See* TBMP § 703.02(m) (3d ed. 2011) ("a deposition on written questions … deprives an adverse party of the right to confront the witness and ask follow-up

---

[19] Insofar as the Board will not entertain any motion *in limine* challenging or otherwise relating to the probative value or sufficiency of a party's trial evidence, the Board's weighing here of the importance of Ms. Jell's testimony should not be interpreted as a finding with respect to any evidence that opposer may have submitted during its testimony period or may submit during its reopened testimony period (discussed *infra*). *See* TBMP § 502.01 (3d ed. 2011) and cases cited therein.

questions on cross-examination"[20]) and cases cited therein. In addition, opposer has refused to consent to an oral deposition of Ms. Jell, notwithstanding applicant's offer to conduct the oral deposition in South Africa. Consequently, the Board finds that applicant has little, if any, ability to cure opposer's failure to provide adequate notice of Ms. Jell as a person who is knowledgeable about the relevant issues to applicant. Therefore, the second factor discussed in *Great Seats* favors applicant.

Regarding the extent to which allowing Ms. Jell's testimony would disrupt the trial, reopening the discovery period to allow applicant to schedule and then conduct a discovery deposition upon written questions of Ms. Jell would significantly disrupt these proceedings.[21] In view thereof,

---

[20] The Board recognizes that applicant may have been hampered by similar limitations in conducting a discovery deposition upon written questions, even if opposer had identified Ms. Jell during the discovery period. However, because there was no notice regarding Ms. Jell's identity earlier in the proceeding, there was no opportunity for applicant to pursue any alternative avenues of discovery with respect to Ms. Jell, whether under Fed. R. Civ. P. 30(b)(1) or (30)(b)(6).

[21] In particular, the Board notes that the parties have stipulated to a great many extensions or suspensions to accommodate settlement talks, but their talks did not result in settlement of the case. Further, the proceeding has already been delayed by the brief reopening of a limited discovery period for applicant in connection with opposer's recently issued and pleaded registration (see Board's order dated May 15, 2012) and the parties' agreed reopening of opposer's trial period for five days (discussed *infra*). Thus, the overall age of these proceedings demands that the parties, if they are not willing to settle the case, move without additional delay through trial.

21

the third factor also favors applicant.

Apart from the five factors discussed in *Great Seats*, the Board is concerned that opposer's failure to identify Ms. Jell in any manner during the discovery period effectively misled applicant as to the identity of persons who might ultimately be identified as prospective trial witnesses. Specifically, given that Ms. Jell is now identified as opposer's sole witness for trial, and thus evidently is thought by opposer to have not just discoverable information, but information that would aid opposer in carrying its burden of proof as plaintiff, the Board finds that opposer should have identified Ms. Jell as a person "likely to have discoverable information that the disclosing party may use to support its claims or defenses," earlier in this proceeding, well before the close of the discovery period. *See Byer*, 95 USPQ2d at 1178 ("It would be curious for a trial witness not to have discoverable information").

Balancing all the foregoing facts and concerns, the Board concludes that opposer failed to timely identify Ms. Jell as a person knowledgeable about the issues involved in these proceedings, and that such failure was neither harmless nor substantially justified. Essentially, opposer treated the initial and pretrial disclosure requirements as unrelated events, rather than recognizing that disclosures

22

and discovery responses should be viewed as a continuum of *inter partes* communication designed to avoid unfair surprise and to facilitate fair adjudication of the case on the merits. For all of these reasons, it is appropriate to apply the estoppel sanction and preclude the testimony of opposer's witness.

Accordingly, applicant's combined motion to strike opposer's pretrial disclosure of Ms. Jell as its testimonial witness and to quash opposer's notice of testimony deposition of Ms. Jell upon written questions is **GRANTED**.[22]

Agreed Reopening of Opposer's Trial Period for Five Days

At the conclusion of the telephone conference, the Board granted applicant's motion to preclude Ms. Jell's testimony, with this order to follow to provide the basis for such decision. Opposer immediately requested additional time to submit evidence by means of notice of reliance. The Board construed opposer's request as a motion to reopen its testimony period, and because applicant consented to the request, granted the motion. *See* Trademark Rule 2.127(a).

Proceedings are Suspended and Trial Dates Remain as Reset in May 30, 2012 Orders

During the subject telephone conference, these

---

[22] In view thereof, applicant's alternative motion to conduct an oral deposition of Ms. Jell is moot.

proceedings were resumed, and opposer's testimony period was set to reopen from June 18 through June 22, 2012, for a period of **FIVE DAYS** to allow opposer to submit additional evidence by notice of reliance. *See generally* TBMP §§ 704.02 *et seq.* (3d ed. 2011). However, since the subject conference, the parties requested that the proceedings be suspended pending their settlement discussions. In view thereof, and in accordance with the Board's related suspension and scheduling orders dated May 30, 2012, these proceedings remain **<u>SUSPENDED</u>** through June 28, 2012, subject to the right of either party to request resumption at any time, and shall resume on <u>June 29, 2012</u>. Opposer's testimony period shall reopen on July 18, 2012, and close on July 22, 2012. Subsequent disclosure and trial dates have been reset accordingly. A copy of the reset trial schedule is set forth below for the parties' convenience.

| | |
|---|---|
| **Time to File Amended Answer** | 6/29/2012 |
| **Reopened discovery for Applicant Closes** | 7/14/2012 |
| **Plaintiff's Testimony Reopens and Closes** | 7/18 - 7/22/2012 |
| **Defendant's Pretrial Disclosures Due** | 8/6/2012 |
| **Defendant's 30-day Trial Period Ends** | 9/20/2012 |
| **Plaintiff's Rebuttal Disclosures Due** | 10/5/2012 |
| **Plaintiff's 15-day Rebuttal Period Ends** | 11/4/2012 |

In each instance, a copy of the transcript of testimony, together with copies of documentary exhibits,

24

must be served on the adverse party within **THIRTY DAYS** after completion of the taking of testimony.  *See* Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.l28(a) and (b).

An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.

✿✿✿